**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-26-00084-001-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Isaac Luis-Azamar, | |
| Defendant. | |

Before me is the Government's Motion in Limine to Exclude Improper Evidence and Argument Regarding Lawfulness of Defendant's Detention by Law Enforcement (Doc. 24 (the "Motion")), to which Defendant Isaac Luis-Azamar responded, (*see* Doc. 48). On May 28, 2026, I held the Final Pretrial Conference in this matter and heard argument on the Motion. For the reasons stated on the record and in my order entered the following day, (Doc. 59), I granted the Motion in part, denied it in part, and took the remainder under advisement. On June 1, 2026, Defendant filed a supplemental response, (Doc. 60), addressing the sole unresolved issue: whether Defendant may introduce evidence about ICE conduct unrelated to the actions of the ICE officers on the day of his father's arrest ("Other ICE Conduct"). For the reasons set forth below, I will **grant** the remaining portion of the Motion and will preclude Defendant from introducing evidence of Other ICE Conduct.

## I.     BACKGROUND

On January 30, 2026, ICE Enforcement and Removal Operations officers operating

in Phoenix identified Defendant's father, Mr. Luis-Castro, as being in the United States unlawfully, prompting the officers to stop, using emergency lights and sirens, the truck in which Mr. Luis-Castro and Defendant were traveling. (Doc. 37 at 1–2; Doc. 28 at 1.)  Both Mr. Luis-Castro and Defendant initially fled on foot,[1] but officers caught Mr. Luis-Castro and took him to the ground to effect his arrest.  (Doc. 37 at 2; Doc. 28 at 2.)  Defendant then approached the officer who was apprehending Mr. Luis-Castro (the "Officer") and made physical contact with the Officer.  (Doc. 37 at 2–3; Doc. 28 at 2.)  Defendant was then arrested and indicted for Assaulting, Resisting, and Impeding a Federal Officer in violation of 18 U.S.C. § 111(a).  (Doc. 6.)

As relevant to the Motion, the parties dispute the nature of Defendant's contact with the Officer, as well as what prompted it.  The Government contends that Defendant threw two punches at the Officer, landing one, and then forced the Officer to the ground and struck him.  (Doc. 37 at 2–3.)  Defendant contends that the Officer used excessive force against his father, seriously injuring Mr. Luis-Castro's shoulder, and that Defendant only pushed the Officer to protect his father, never punching anyone.  (Doc. 28 at 2.)

Defendant intends to pursue a defense-of-others affirmative defense at trial predicated on excessive force by a federal law enforcement officer.  (*See id.*)  Anticipating that Defendant would seek to present testimony about his subjective beliefs concerning ICE to support his affirmative defense, the Government filed the Motion.  (*See* Doc. 24.)  In response, Defendant argued that he should be allowed to testify about "any relevant prior experiences or things he saw, heard, or knew about ICE that provided a reasonable basis for his use of force to defend Mr. Luis-Castro."  (Doc. 48 at 2.)  Put another way, he seeks to "introduce evidence of [Defendant's] state of mind at the time of the alleged assault" and extrinsic evidence supporting that state of mind.  (Doc. 60 at 3 ("Mr. Luis-Azamar's fear that ICE officers would hurt his father if he did not intervene is objectively reasonable, and he should be permitted to introduce evidence about why he feared them.  He should

---

[1]     Defendant indicated that he fled because he "was scared when officers stopped him because he had seen news of immigration officers using excessive force against people." (Doc. 28 at 2.)

also be permitted to introduce extrinsic evidence to corroborate his knowledge and state of mind.").)

## II.   LEGAL STANDARD

Motions in limine seek "to limit in advance testimony or evidence in a particular area."  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Generally, parties seek to exclude anticipated prejudicial evidence before the evidence is introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  Although not expressly authorized by the Federal Rules of Evidence, courts may grant such motions under their "inherent authority to manage trials."  *Id.* at 41 n.4.  Rulings on motions in limine are not immutable, and they may be revised up to and during trial: "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."  *Id.* at 41–42.[2]

## III.   ANALYSIS

The Government argued in its Motion and at the May 28 Final Pretrial Conference that Other ICE Conduct is irrelevant and, even if relevant, excludable because it is prejudicial and likely to confuse the issues.  (Doc. 24 at 3.)  To be admissible at trial, evidence must be relevant; that is, it must have "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 (making clear that relevant evidence is admissible unless otherwise prohibited by statute or rule and confirming that "[i]rrelevant evidence is not admissible").  Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### A.   Relevance Under Rule 401

Whether evidence of Other ICE Conduct—including Defendant's knowledge of that

---

[2]   As I indicated at the Final Pretrial Conference, one situation that may cause me to alter a prior in limine ruling is if the Government opens the door to otherwise inadmissible testimony.

conduct—is relevant depends on the standards applicable to his defense-of-others affirmative defense.[3]   There is no Ninth Circuit caselaw addressing this precise issue. Nonetheless, the Ninth Circuit's decisions addressing self defense in the context of an assault charge under 18 U.S.C. § 111 are instructive.

As relevant to the analysis here, in the Ninth Circuit a defendant may assert self defense against federal law enforcement officers under two distinct theories.  First, self defense may be asserted if the defendant (1) did not know that the alleged victim was a federal officer, (2) reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force, and (3) used no more force than appeared reasonably necessary in the circumstances.  *See United States v. Span*, 970 F.2d 573, 576–77 (9th Cir. 1992) ("*Span I*") (citing *United States v. Feola*, 420 U.S. 671, 684 (1975)); *see also* Ninth Circuit Model Jury Instruction 8.3 (2022).[4]   Under the *Feola* Theory, a defendant may assert self defense based on the apprehension of "an immediate use of unlawful force"—i.e., force that has not yet occurred—but only if the defendant was unaware that the alleged victim was a federal law enforcement officer.  *Span I*, 970 F.2d at 576 (quoting Ninth Circuit Model Jury Instruction 8.02B (West 1989) (functionally equivalent to Ninth Circuit Model Jury Instruction 8.3 (2022))); *see United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (holding that a defendant was entitled to a self-defense instruction because he did not know the alleged victim was a federal law enforcement officer—he believed he was "being attacked by bandits"—and "a rational jury could conclude that [the defendant] reasonably believed that he was about to receive another beating").

The second theory under which a defendant may assert self defense to a charge of

---

[3]   The relevant caselaw in the Ninth Circuit does not distinguish between self defense and defense of others.  *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) (reciting general standard for self defense which requires, among other things, "a reasonable belief that the use of force was necessary to *defend himself or another* against the immediate use of unlawful force" (emphasis added)).  Accordingly, the applicable standards for self defense apply equally to Defendant's defense-of-others defense.

[4]   For purposes of this Order, this self-defense theory will be referred to as the "*Feola* Theory" given that it arises from the Supreme Court's decision bearing that name.

assaulting a federal officer does not require that the defendant lack knowledge that the officer was a federal law enforcement officer and is instead based on a "defendant's right to use reasonable force to repel excessive force by a federal law enforcement officer." *Span I*, 970 F.2d at 577; *see also United States v. Span*, 75 F.3d 1383, 1388 (9th Cir. 1996) ("*Span II*") ("The theory is that a person has a right to resist an officer who is using excessive force."). The Ninth Circuit has held that this second self-defense theory (the "Excessive Force Theory") can be adequately covered by the general self defense instruction. *United States v. Ornelas*, 906 F.3d 1138, 1148 (9th Cir. 2018). Under that standard, the Excessive Force Theory requires a defendant to have reasonably believed his use of force was necessary to defend against the officer's immediate use of unlawful—i.e., excessive—force; it does not extend to force that a defendant merely fears may occur at some point in the future. Indeed, although the Ninth Circuit did not frame the issue as such in *Acosta-Sierra*, it made clear that the Excessive Force Theory was not available where "there was no use of force, let alone any excessive force, from which one might reasonably suggest that a cognizable theory of self defense would lie." 690 F.3d 1111, 1126 (9th Cir. 2012).

Additionally, regardless of the specific self-defense theory utilized, a defendant's reasonable belief that use of force was required must be judged based on an "objectively reasonable person" standard rather than a subjective standard. *Id.* In *Acosta-Sierra*, the defendant sought to admit expert testimony concerning a psychotic breakdown that made him honestly believe that jail officials and others were trying to kill him. *Id.* The Ninth Circuit affirmed the district court's refusal to admit this evidence because "[w]hile mental health evidence would have explained why Acosta-Sierra subjectively believed that self defense was necessary under the circumstances, it would not have supported the proposition that his actions were objectively reasonable." *Id.*

In this case, Defendant does not, and cannot, assert defense of others based on the *Feola* Theory because he knew that the Officer was a federal law enforcement officer. Thus, he may only pursue the Excessive Force Theory, predicated on his reasonable belief

that use of force was necessary to defend his father against excessive force by the ICE officers, and that he used no more force than appeared reasonably necessary in the circumstances. *See Span I*, 970 F.2d at 577 (indicating that excessive-force self-defense theory was tenable if the jury "1) believed that the exercise of force by [the officers] was unlawful because it was excessive, and 2) found that the [defendants] reasonably defended themselves from that unlawful exercise of force"); *see also Ornelas*, 906 F.3d at 1147–48.[5]

Evidence of Other ICE Conduct—i.e., conduct by officers not involved in Mr. Luis-Castro's arrest, occurring days and weeks before the arrest, and occurring in locations far from Arizona—is irrelevant to whether Defendant reasonably believed that ICE officers were using excessive force against his father. Put another way, testimony concerning the things that different ICE agents did to different people, at different times, and in different places, does not make it more or less likely the ICE officers who arrested Mr. Luis-Castro were using excessive force when Defendant intervened. This is true under either an "objectively reasonable person" standard or a "subjective belief" standard.

The evidence that is relevant to Defendant's Excessive Force Theory is evidence concerning the force the ICE officers were actually using when they were arresting his father in Phoenix, AZ, on January 30, 2026. Defendant effectively concedes that this is the relevant inquiry: "[T]he officers' conduct, specifically whether they used excessive force, is of paramount importance to Mr. Luis-Azamar's defense." (Doc. 48 at 2–3.) I agree, and Defendant may adduce evidence about the ICE officers' conduct during his father's arrest, including via Defendant's testimony if he chooses to testify.

This same rationale forecloses any argument that Defendant needs this evidence to establish that he used "no more force than was reasonably necessary in the circumstances." *Acosta-Sierra*, 690 F.3d at 1126 (quotation marks omitted); *see also Ornelas*, 906 F.3d at 1147–48. The reasonableness of the degree of force a defendant employs is gauged by the

---

[5] I declined to hear argument concerning the parties' proposed final jury instructions because the final instruction to the jury will depend in large part on the evidence adduced by the parties at trial. Nonetheless, the analysis set forth in this Order should indicate the principles I will use to fashion appropriate final instructions, and how the parties should prepare for trial.

circumstances actually confronting him, principally the nature and intensity of the force the alleged victim is using in the encounter at issue.  Thus, Other ICE Conduct—and Defendant's knowledge of that conduct—has no tendency to show how much force was reasonably necessary to repel the force the ICE officers were actually using against Mr. Luis-Castro on January 30, 2026.

Despite acknowledging the scope of relevant evidence—namely the ICE officers' conduct vis-à-vis Mr. Luis-Castro—Defendant cites *People v. Goetz*, 497 N.E.2d 41 (N.Y. 1986), for the proposition that the "background and other relevant characteristics of a particular actor" are relevant under the objective reasonableness standard applicable in self-defense cases in the Ninth Circuit. (Doc. 48 at 2.)  Defendant's reliance on *Goetz* is misplaced.  First, *Goetz* is readily distinguishable because the victims there were not federal law enforcement officers and the defendant's self-defense theory was not predicated on any force exerted by the victims against him.  Second, and relatedly, even if *Goetz* was instructive as to how to apply the Ninth Circuit's "objectively reasonable person" standard, it would not alter the analysis here because, as explained above, Other ICE Conduct has no bearing on whether Defendant reasonably believed the ICE officers were using excessive force on his father when he intervened.

In his supplemental response, Defendant further argues that his mental state that he "feared for his life based on videos he had seen on social media" is relevant and admissible evidence. (Doc. 60 at 3.)  Such evidence is irrelevant because, as explained above, Defendant's state of mind and fear of potential future excessive force by federal law enforcement officers does not make it more or less likely that he reasonably believed his use of force was necessary to stop excessive force that was actually occurring.  *See Span I*, 970 F.2d at 577; *Span II*, 75 F.3d at 1388.  Simply put, Defendant's state of mind is irrelevant to whether he observed the ICE officers engaging in excessive force against his father.

Likewise, Defendant's citation to *United States v. Saenz*, 179 F.3d 686 (9th Cir. 1999), and *United States v. James*, 169 F.3d 1210 (9th Cir. 1999), for the proposition that

a defendant asserting self-defense may testify that he knew of a victim's prior acts of violence, and may introduce extrinsic evidence of those acts to corroborate his state of mind, (Doc. 60 at 2–3), is unavailing.  Both cases address a defendant's knowledge of the prior violent acts of the alleged victim—that is, the very person against whom the defendant used force—to establish that the defendant's apprehension of that particular individual was reasonable.  But, as previously discussed, Defendant's apprehension is irrelevant because his Excessive Force Theory must be predicated on the ICE officers' conduct toward his father.

*Saenz* and *James* also do not help him because in this case the alleged victim is the Officer, and Defendant does not contend that the Officer had any history of violence, much less that Defendant knew of any such history.  Instead, Defendant proffers evidence of acts committed by different ICE officers, against different people, in a different state.  Neither *Saenz* nor *James* authorizes the admission of a third party's conduct to establish the reasonableness of a defendant's fear of the alleged victim, and Defendant's "imputation" argument, (*see* Doc. 60 at 3 n.1), fails given that he cites no authority to support this theory, and I am aware of none.  Furthermore, adoption of Defendant's imputation theory would be untenable because a § 111 defendant could place the entire institutional history of a federal agency before the jury any time an Excessive Force Theory was presented.

### B.     Confusion of Issues and Unfair Prejudice Under Rule 403

Even if evidence of Other ICE Conduct were marginally relevant to Defendant's Excessive Force Theory, such evidence must be excluded because any minimal probative value is substantially outweighed by a danger of confusing the issues.  Defendant indicated in his supplemental response that he may attempt to turn this trial into a referendum on ICE's conduct generally, based on the actions of ICE officers in Minnesota in the days and weeks before the alleged assault:

> To show that he reasonably believed force was necessary, Mr. Luis-Azamar may introduce evidence of his state of mind at the time of the alleged assault. On January 30, 2026, Mr. Luis-Azamar told the FBI that when he saw the armed ICE agents, he feared for his life because of videos he had seen on social media, including those in which ICE officers shot United States

citizens.  His fear was not based on things that existed solely in his head or that were known only to him.  On January 7, 2026, and January 24, 2026, the world watched ICE agents shoot and kill two people in Minnesota.  These shootings happened in the *weeks* leading up to Mr. Luis-Azamar's own encounter with ICE officers and made international news.

(Doc. 60 at 3.)  The introduction of evidence concerning the conduct of ICE agents who were not involved with Mr. Luis-Castro's arrest would confuse the issues and waste time.

The danger of confusing the issues is compounded by a substantial risk of unfair prejudice.  "Unfair prejudice within [the] context [of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (internal quotation marks omitted).  The Other ICE Conduct evidence Defendant proposes to introduce—that ICE officers shot and killed United States citizens in Minnesota in the days and weeks before his father's arrest—is precisely the kind of emotionally charged material that invites a verdict resting on the jury's views of ICE as an institution or of immigration enforcement generally, rather than on the narrow question whether Defendant forcibly assaulted the Officer without justification.  Allowing Defendant to place unrelated actions by other officers before the jury would create a serious risk that the jury would acquit or convict out of sympathy or hostility to ICE generally, untethered to the charged conduct and the facts introduced at trial.  This danger of unfair prejudice, together with the dangers of confusing the issues and wasting time, substantially outweighs whatever minimal probative value the proposed Other ICE Conduct evidence might have, and I do not believe an instruction could cure these dangers.  Accordingly, even if marginally relevant, Rule 403 provides an independent basis to exclude evidence of the Other ICE Conduct.

### C.    Sixth Amendment

In the penultimate sentence of his supplemental response, Defendant contends in brief and conclusory fashion that precluding the Other ICE Conduct evidence would deny him the right to present a complete defense guaranteed by the Sixth Amendment.  (Doc. 60 at 3–4.)  This argument fails because the right to present a defense, though fundamental, is

not unlimited. Rather, as the Supreme Court has explained, that right is not absolute and a defendant has no "right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present relevant evidence is . . . subject to reasonable restrictions" and "rules excluding evidence from criminal trials . . . do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve" (internal quotation marks omitted)).

Because Defendant's proposed Other ICE Conduct evidence is irrelevant under Rule 401, and is independently excludable under Rule 403, its exclusion does not violate his right to present a defense. Defendant has not explained how or why the Sixth Amendment would require me to disregard those rules of evidence. Furthermore, as noted above, Defendant is free to present the substance of his Excessive Force Theory: he may testify about what he observed during his father's arrest, including the force used by the ICE officers, may introduce other evidence of the officers' conduct towards his father, and may argue that the force they were applying to Mr. Luis-Castro was excessive and that his response was reasonable.

## IV.    CONCLUSION

For the foregoing reasons, the remaining portion of the Motion will be granted. Accordingly,

**IT IS ORDERED** granting the remaining portion of the Government's Motion in Limine to Exclude Improper Evidence and Argument Regarding Lawfulness of Defendant's Detention by Law Enforcement (Doc. 24). Defendant is precluded from introducing evidence of ICE conduct unrelated to the actions of the ICE officers on the day of his father's arrest.

Dated this 4th day of June, 2026.

Honorable Sharad H. Desai
United States District Judge

- 10 -